THE STATE OF OHIO, APPELLEE, *v.* ELMORE, APPELLANT.

[Cite as *State v. Elmore,* 122 Ohio St.3d 472, 2009-Ohio-3478.]

*Criminal law — Resentencing pursuant to State v. Foster — Nonminimum and consecutive sentences permitted — Retroactive application of State v. Foster.*

(No. 2007-0475 — Submitted May 19, 2009 — Decided July 28, 2009.)

APPEAL from the Court of Common Pleas of Licking County,

No. 02 CR 275.

_____

### SYLLABUS OF THE COURT

1.  Resentencing pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, for offenses that occurred prior to February 27, 2006, does not violate the Sixth Amendment right to a jury trial or the Ex Post Facto or Due Process Clauses of the United States Constitution.

2.  A trial court, upon resentencing pursuant to *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, has discretion to impose consecutive sentences and, despite the *Foster* severance of statutory presumptions, is not required by the rule of lenity to impose a minimum prison term.

_____

LANZINGER, J.

## I.  Case Procedure

{¶ 1}  Appellant, Phillip E. Elmore, was convicted by a jury of aggravated murder with four death specifications, murder, kidnapping, aggravated robbery, aggravated burglary, and grand theft of a motor vehicle in the June 2002 death of Pamela Annarino.  He was sentenced to death for the capital offense of aggravated murder. On the noncapital offenses, the trial court merged Count 2,

murder, with Count 1, aggravated murder, and imposed a ten-year term of imprisonment for Counts 3, 4, and 5, and an 18-month term of imprisonment for Count 6. Count 3 was ordered to be served concurrently with all other counts, while Counts 4, 5, and 6 were ordered to run consecutively to one another and consecutively to the death sentence imposed for Count 1. Thus, Elmore's total prison term for the noncapital offenses was 21 and 1/2 years.

{¶ 2} Elmore's convictions and death sentence were affirmed by this court on December 13, 2006. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 169. However, we held that the trial court's fact-finding in support of maximum and consecutive sentences for the noncapital offenses violated *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, which declared parts of Ohio's felony-sentencing scheme unconstitutional. *Elmore* at ¶ 139. Consequently, this court remanded Elmore's case to the trial court for a new sentencing hearing on the noncapital offenses in accordance with *Foster*. *Elmore* at ¶ 140. On remand, the trial court resentenced Elmore to exactly the same sentence.

{¶ 3} Elmore then filed this appeal as a matter of right to challenge his resentencing. We hold that Elmore's post-*Foster* resentencing was proper and therefore affirm the judgment of the Licking County Court of Common Pleas.

## II. Analysis of Propositions

{¶ 4} In summary, Elmore challenges the *Foster* remedy as it has been applied to him. He contends that the trial court should have imposed no more than minimum and concurrent prison terms for a total prison term of three years and that his resentencing pursuant to *Foster* (1) violates his right to a jury trial, (2) is an ex post facto violation, (3) is a due process violation, (4) was imposed by a court that lacked jurisdiction to impose consecutive sentences, and (5) is

forbidden by the rule of lenity.[1] We disagree and affirm the judgment of the court of common pleas, now addressing Elmore's five propositions of law separately.

*A. Right to Trial by Jury*

**{¶ 5}** In proposition of law one, Elmore argues that the *Foster* remedy cannot be applied retroactively to his noncapital sentencing because it violates his Sixth Amendment right to a jury trial based upon principles articulated in three cases that hold that the jury must determine any fact (other than the existence of a prior conviction) that increases the maximum authorized punishment. *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; and *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct.738, 160 L.Ed.2d 621.

**{¶ 6}** In *Foster*, we examined Ohio's felony-sentencing structure and held that certain statutes violated Sixth Amendment principles as stated in the *Apprendi* line of cases. Consequently, we applied the *Booker* remedy and severed the unconstitutional statutes requiring judicial factfinding. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 90. Elmore, who committed his crimes in June 2002, resists the retroactive application of *Foster* because, he avers, he was deprived of "constitutional statutory presumptions" that were in effect when he committed the offenses.

**{¶ 7}** Much of Elmore's argument rests on a misunderstanding of *Foster* and the remedy of severance. We held in *Foster* that a court may not be required to make findings before imposing more than a minimum prison term pursuant to R.C. 2929.14(B); however, we have never held that the presumptive minimum

---

1. In Elmore's previous appeal to this court, the state argued that Elmore's challenge to the noncapital sentences was rendered moot by Elmore's death sentence. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, at ¶ 139. The state has reiterated that argument in the present appeal; however, because we held in the original appeal that the trial court's reliance upon unconstitutional sentencing statutes when imposing maximum and consecutive sentences on the noncapital offenses violated Elmore's constitutional rights, our review of Elmore's resentencing is proper.

prison term equated to a statutory maximum term. A defendant convicted of an offense has always been on notice that the statutory maximum is the greatest prison term within a felony range. While the *Foster* decision severed the requirement that judges make findings before imposing a nonminimum prison term, the severance does not make it necessary that defendants receive a minimum prison term if findings are not made.

**{¶ 8}** Elmore argues that after *Foster,* a trial court may never impose nonminimum or consecutive sentences because before *Foster,* judges were required to make findings of fact in order to depart from the minimum sentence. Elmore then argues that he is entitled to no more than minimum concurrent terms. But we had specifically considered and rejected this very outcome in *Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 88-89. And we clarified that trial courts have full discretion to impose a prison sentence within the statutory range without the mandatory findings. Id. at ¶ 100.

**{¶ 9}** Elmore faced no greater penalty on resentencing than he did at his original sentencing. And both in *Foster* and the companion case of *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, we made clear that sentencing courts in this state must still consider all of the remaining sentencing factors contained in several sections of R.C. Chapter 2929. "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range." *Foster*, ¶ 105. Unaffected sections "include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself." *Mathis* at ¶ 38.

**{¶ 10}** As Justice Stevens stated in *Booker* concerning the federal guidelines, "If the Guidelines as currently written could be read as merely

advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. * * * For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker*, 543 U.S. at 233, 125 S.Ct.738, 160 L.Ed.2d 621.

{¶ 11} Resentencing under *Foster* did not violate Elmore's Sixth Amendment right to jury trial.

### B. Ex Post Facto Clause

{¶ 12} Elmore argues in proposition of law two that the application of the *Foster* remedy to his noncapital sentencing violated the Ex Post Facto Clause of the United States Constitution because the *Foster* remedy constituted judicial legislation. We do not agree.

{¶ 13} We held that *Foster*'s holding would be applied to all cases on direct review, relying on *Booker*'s retroactive approach. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 106. Because Elmore's appeal was on direct review when *Foster* was decided, his case was remanded to the trial court for resentencing. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 130-140.

{¶ 14} Section 10, Article I of the United States Constitution provides that "[n]o State shall * * * pass any * * * ex post facto Law." The Ohio Constitution contains a similar provision, Section 28, Article II. Although the Ex Post Facto Clause limits only legislative acts, similar limits have been placed on judicial opinions. In *Bouie v. Columbia* (1964), 378 U.S. 347, 353–354, 84 S.Ct. 1697, 12 L.Ed.2d 894, the Supreme Court ruled that the judicial enlargement of a criminal statute, applied retroactively, violated the Due Process Clause because it was

unforeseeable and acted precisely like an ex post facto law. See also *State v. Garner* (1995), 74 Ohio St.3d 49, 57, 656 N.E.2d 623, quoting *Bouie* at 353, 84 S.Ct. 1697, 12 L.Ed.2d 894.

{¶ 15} Judicial alteration of a common-law doctrine of criminal law will violate the principle of fair warning and will not be given retroactive effect only where the alteration "is ' "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." ' " *Rogers v. Tennessee* (2001), 532 U.S. 451, 462, 121 S.Ct. 1693, 149 L.Ed.2d 697, quoting *Bouie* at 354, 84 S.Ct. 1697, 12 L.Ed.2d 894, quoting Hall, General Principles of Criminal Law (2d Ed.1960) 58–59 (upholding the Tennessee Supreme Court's abrogation of the common-law "year and a day rule" in homicide prosecutions).

{¶ 16} In essence, Elmore argues that this court's *Foster* decision effected a change in the substantive law applicable to his case. However, his arguments that under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, he was entitled to have a jury determine all facts relevant to an enhanced sentence and that the *Foster* decision took away that substantive right are meritless.

{¶ 17} The trial court on remand followed the instructions of *Foster* by referring to all statutory provisions that it was required to consider: "The Court has considered the record, oral statements, and the Presentence Investigation prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12." And although it was no longer required to do so, the court made additional findings by stating: "The Court finds that the minimum sentence in this case would not adequately punish the defendant nor would it address the seriousness of the offense committed and would demean the seriousness of the offenses." Then the court imposed a sentence identical to the one that Elmore had received originally for his noncapital offenses.

**{¶ 18}** His ex post facto challenge fails because there has been no increase in potential punishment. "Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*." *Dobbert v. Florida* (1977), 432 U.S. 282, 293–294, 97 S.Ct.2290, 53 L.Ed.2d 344; see also *Beazell v. Ohio* (1925), 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216; *Collins v. Youngblood* (1990), 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30.

**{¶ 19}** Elmore cites *Miller v. Florida* (1987), 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351, to argue that the *Foster* remedy changed the actual terms of the sentencing statutes and must be viewed as an implied legislative change that is barred by ex post facto limitations. In *Miller*, Florida's presumptive prison range for an offense was changed by the legislature from 3 1/2 to 4 1/2 years to 5 1/2 to 7 years. *Miller*, 482 U.S. at 424, 426-428, 107 S.Ct. 2446, 96 L.Ed.2d 351.

**{¶ 20}** The United States Supreme Court held that the application of the revised guidelines in effect at sentencing, rather than those in effect when Miller committed his offenses, constituted an ex post facto violation. The Supreme Court held that the defendant was "substantially disadvantaged" by imposition of the sentence under the new guidelines because it foreclosed his ability to challenge the imposition of a sentence longer than the presumptive sentence under the old law. Id. at 433, 107 S.Ct. 2446, 96 L.Ed.2d 351.

**{¶ 21}** *Miller*, however, is distinguishable from Elmore's situation. Before *Foster*, Elmore was always subject to a three-to-ten-year sentence for his conviction of each of the first-degree felonies and a six-to-18-month sentence for his conviction of the fourth-degree felony (grand theft, auto). After *Foster*, there is no increased presumptive sentence, which was the ex post facto violation in *Miller*. Moreover, Elmore maintained his right to appeal any sentence. See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26.

**{¶ 22}** Therefore, Elmore's resentencing was not an ex post facto violation.

*C. Due Process*

**{¶ 23}** In proposition of law three, Elmore argues that his resentencing on the noncapital offenses violates due process. The United States Supreme Court has emphasized that when addressing due process claims of an ex post facto nature, concepts of "notice, foreseeability, and, in particular the right to fair warning" are paramount. *Rogers*, 532 U.S. at 459, 121 S.Ct. 1693, 149 L.Ed.2d 697. These concepts are important because the public must be able to adequately inform itself of a law or a judicial interpretation before acting. *United States v. Barton* (C.A.6, 2006), 455 F.3d 649, 654-655.

**{¶ 24}** The application of the *Foster* remedy to Elmore's resentencing does not violate his due process rights. First, *Foster* did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to his earlier committed offenses, nor did it create the possibility of consecutive sentences where none had previously existed. Thus, Elmore had notice of the sentencing range, which was the same at the time he committed the offenses as when he was resentenced. He never had an irrebuttable presumption of minimum and concurrent sentences. See *State v. Mallette*, 8th Dist. No. 87984, 2007-Ohio-715, 2007 WL 530187, ¶ 47; *State v. Houston*, 10th Dist. No. 06AP-662, 2007-Ohio-423, 2007 WL 275596, ¶ 5.

**{¶ 25}** Second, in discussing *Booker* retroactivity, the Sixth Circuit stated: "For this court to find that notice is a significant concern in this situation, it would have to find that a defendant would likely have changed his or her conduct because of a possible increase in jail time." *Barton*, 455 F.3d at 656. Elmore does not claim that he might have altered his conduct because of the possibility that the elimination of judicial factfinding and presumptive concurrent and minimum sentences might result in an increased prison term.

**{¶ 26}** Moreover, Ohio courts of appeals have consistently held that there is no due process or ex post facto violation in applying *Foster* to cases that have

not completed their direct appeal. A significant part of the rationale for all these cases has been that the defendants were on notice of the potential maximum sentences for their crimes before *Foster*, and there was no change in the maximum sentences after *Foster* was decided. See *State v. Bruce*, 170 Ohio App.3d 92, 2007-Ohio-175, 866 N.E.2d 44, ¶ 11; *State v. Smith*, 2d Dist. No. 21004, 2006-Ohio-4405, 2006 WL 2459101, ¶ 34; *State v. McGhee*, 3d Dist. No. 17-06-05, 2006-Ohio-5162; 2006 WL 2796275, ¶ 20; *State v. Grimes*, 4th Dist. No. 06CA17, 2006-Ohio-6360, 2006 WL 3480378, ¶ 9-11; *State v. Paynter*, 5th Dist. No. CT2006-0034, 2006-Ohio-5542, 2006 WL 3020319, ¶ 40-42; *State v. Coleman*, 6th Dist. No. S-06-023, 2007-Ohio-448, 2007 WL 293171, ¶ 19-20; *State v. Mallette*, 8th Dist. No. 87984, 2007-Ohio-715, 2007 WL 530187, ¶ 47; *State v. Gibson*, 10th Dist. No. 06AP-509, 2006-Ohio-6899, 2006 WL 3775878, ¶ 18; *State v. Elswick*, 11th Dist. No. 2006-L-075, 2006-Ohio-7011, 2006 WL 3833868, ¶ 21-25; *State v. Doyle*, 12th Dist. No. CA2005-11-020, 2006-Ohio-5373, 2006 WL 2934289, ¶ 49-50.

**{¶ 27}** Additionally, federal circuit courts have addressed the due process and ex post facto arguments in relation to the application of the *Booker* decision. Several circuit courts have rejected these arguments primarily on the basis that defendants were on notice as to the statutory maximums regardless of whether the federal sentencing guidelines were mandatory. *United States v. Alston-Graves* (C.A.D.C. 2006), 435 F.3d 331, 343; *United States v. Lata* (C.A.1, 2005), 415 F.3d 107, 112; *United States v. Vaughn* (C.A.2, 2005), 430 F.3d 518, 524-525; *United States v. Pennavaria* (C.A.3, 2006), 445 F.3d 720, 723-724; *United States v. Davenport* (C.A.4, 2006), 445 F.3d 366, 369-370; *United States v. Jamison* (C.A.7, 2005), 416 F.3d 538, 539; *United States v. Dupas* (C.A.9, 2005), 419 F.3d 916, 921; *United States v. Duncan* (C.A.11, 2005), 400 F.3d 1297, 1307-1308.

**{¶ 28}** Finally, in his reply brief, Elmore cites *Danforth v. Minnesota* (2008), __ U.S. __, 128 S.Ct. 1029, 169 L.Ed.2d 859, in arguing that application

of the *Foster* remedy is not constitutionally required in his case. Danforth, in a petition for postconviction relief, had sought retroactive application of *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, which generally bars out-of-court testimonial witness statements. The Minnesota Supreme Court held that under *Teague v. Lane* (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, it could apply a new rule of federal constitutional criminal procedure retroactively on collateral review only if the rule was substantive or a " 'watershed rule' of criminal procedure" implicating the fundamental fairness and accuracy of the proceedings. *Danforth v. State* (Minn.2006), 718 N.W.2d 451, 457, 460. The United States Supreme Court reversed, holding that *Teague* does not bar states from giving broader retroactive effect to new rules of federal constitutional criminal procedure in their own state collateral proceedings. *Danforth*, ___ U.S. at ___, 128 S.Ct. at 1042, 1047, 169 L.Ed.2d 859.

{¶ 29} Elmore's case involves a direct appeal, rather than a collateral attack. Furthermore, because *Danforth* holds that states may be *more generous* in giving retroactive effect to new federal rules in state postconviction proceedings, Elmore's argument that *Danforth* somehow limits this court's ability to retroactively apply the *Foster* remedy to his case lacks merit.

{¶ 30} Elmore's resentencing did not violate his due process rights.

### D. Consecutive Sentences

{¶ 31} In proposition of law four, Elmore argues that the trial court lacked the authority to impose consecutive sentences because *Foster,* as part of its remedy, excised in their entirety R.C. 2929.14(E)(4) and 2929.41(A), the statutory provisions that authorized consecutive sentences. Thus, he contends that the trial court lacked any statutory or constitutional basis to impose consecutive sentences in his case.

{¶ 32} We addressed this issue in *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328. In *Bates*, we considered whether a trial court has the authority after *Foster* to order a prison sentence that it imposes to be served consecutively to a prison sentence already imposed by another Ohio court. Id. at ¶ 11. We stated that before *Foster*, R.C. 2929.14(E)(4) and 2929.41(A) did not permit a trial court to order a prison sentence to be served consecutively to a prison sentence previously imposed on the offender by a different court. Id. at ¶ 14. However, *Foster* severed and excised R.C. 2929.14(E)(4) and 2929.41(A) in their entirety. Thereafter, no statute remained to establish presumptions for concurrent and consecutive sentences. Id. at ¶ 18.

{¶ 33} We held in *Bates* that in the absence of statutory authority, "the common-law presumptions are reinstated." *Bates* at ¶ 18, citing 73 American Jurisprudence 2d (2007), Statutes, Section 271 (the repeal of a statute that abrogates the common law operates to reinstate the common-law rule). We also stated that " 'in the absence of [a] statute [stating otherwise], it is a matter solely within the discretion of the sentencing court as to whether sentences shall run consecutively or concurrently.' " Id. at ¶ 13, quoting *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181, 22 O.O.2d 116, 187 N.E.2d 888. See also *State ex rel. Stratton v. Maxwell* (1963), 175 Ohio St. 65, 67, 23 O.O.2d 357, 191 N.E.2d 549. ("It is clear that a court has the power to impose consecutive sentences"); *Henderson v. James* (1895), 52 Ohio St. 242, 254-255, 39 N.E. 805 ("this court, with the courts of most of the other states, as well as England, has sustained cumulative sentences without the aid of a statute"). In *Bates*, we held that after *Foster*, a "trial court now has the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently." *Bates* at ¶ 19.

{¶ 34} Since Foster was decided, the United States Supreme Court has announced *Oregon v. Ice* (2009), ___ U.S. ___, 129 S.Ct. 711, 714, 172 L.Ed.2d

517, a case that held that a jury determination of facts to impose consecutive rather than concurrent sentences was not necessary if the defendant was convicted of multiple offenses, each involving discrete sentencing prescriptions. The jury historically played no role in a decision to impose sentences consecutively or concurrently. The choice rested exclusively with the judge, and thus the Oregon statutes did not erode any traditional function of the jury. Further, the state had sovereign authority over the administration of its criminal justice system, and there was no compelling reason to diminish the state's role by curbing the state's limitation on the discretion of judges in imposing consecutive or concurrent sentences.

{¶ 35} *Foster* did not prevent the trial court from imposing consecutive sentences; it merely took away a judge's duty to make findings before doing so. The trial court thus had authority to impose consecutive sentences on Elmore. We will not address fully all ramifications of *Oregon v. Ice*, since neither party sought the opportunity to brief this issue before oral argument.[2]

### E. The Rule of Lenity

{¶ 36} Elmore argues in his fifth proposition of law that the trial court's imposition of consecutive, nonminimum, and maximum sentences violated the rule of lenity. He alleges that he should have received minimum and concurrent sentences for his noncapital offenses.

{¶ 37} The "rule of lenity" is codified in R.C. 2901.04(A), which provides that sections of the Revised Code that define penalties "shall be strictly construed against the state, and liberally construed in favor of the accused."

---

2. Three weeks after oral argument, the state filed a "Motion for Post-Argument Supplemental Briefing Regarding Impact of *Oregon v. Ice*." That motion is denied. The common pleas court had no opportunity to consider the impact of *Ice* on this case and our opinion in *Foster*. Furthermore, after the United States Supreme Court opinion in *Ice* was announced in January, both Elmore and the state had more than four months to file a motion seeking to supplement the briefs prior to oral argument; however, the parties chose not to do so.

**{¶ 38}** The rule of lenity is a principle of statutory construction that provides that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous. See *Moskal v. United States* (1990), 498 U.S. 103, 107-108, 111 S.Ct. 461, 112 L.Ed.2d 449, quoting *Bifulco v. United States* (1980), 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205, quoting *Lewis v. United States* (1980), 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (" 'the "touchstone" of the rule of lenity "is statutory ambiguity" ' "); *State v. Arnold* (1991), 61 Ohio St.3d 175, 178, 573 N.E.2d 1079. Under the rule, ambiguity in a criminal statute is construed strictly so as to apply the statute only to conduct that is clearly proscribed. *United States v. Lanier* (1997), 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432.

**{¶ 39}** In arguing that the rule of lenity was violated, Elmore asserts that the General Assembly enacted a statutory scheme intended to reserve consecutive and maximum sentences for the worst offenders and offenses. He contends that *Foster*'s elimination of statutory presumptions for minimum and concurrent sentences and the elimination of limitations on judicial discretion in imposing greater prison terms constituted the least lenient construction of the statutes applied in resentencing him. Accordingly, Elmore argues that he should have been sentenced to minimum and concurrent sentences for his noncapital offenses.

**{¶ 40}** Elmore's argument misconstrues the rule of lenity. He seeks to apply the rule by arguing that the *Foster* remedy ignored the General Assembly's intent in enacting the sentencing laws. However, the rule of lenity applies to the construction of ambiguous statutes and not to determinations of a remedy for a statute's unconstitutionality or to the law regarding the retroactive application of this court's decisions. *United States v. Johnson* (2000), 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 ("Absent ambiguity, the rule of lenity is not applicable to guide statutory interpretation"); *Gozlon-Peretz v. United States*

(1991), 498 U.S. 395, 410, 111 S.Ct. 840, 112 L.Ed.2d 919, quoting *Callanan v. United States* (1961), 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (" 'The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers' "). See also *State v. Green*, 11th Dist. Nos. 2005-A-0069 and 2005-A-0070, 2006-Ohio-6695, 2006 WL 3703204, ¶ 24.

{¶ 41} Elmore argues that there is an ambiguity in the sentencing statutes because they have been severed. Nevertheless, nothing in the language of the version of R.C. 2929.14 effective at the time of Elmore's resentencing is ambiguous. As we explained, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for maximum, consecutive, or more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100. Accordingly, the rule of lenity does not apply. See *State v. Ross*, 9th Dist. No. 23375, 2007-Ohio-1265, 2007 WL 841022, ¶ 15; *State v. Houston*, 10th Dist. No. 06AP-662, 2007-Ohio-423, 2007 WL 275596, ¶ 7; *State v. Moore*, 3d Dist. No. 1-06-51, 2006-Ohio-6860, 2006 WL 3771098, ¶ 12.

### III. Conclusion

{¶ 42} We hold that resentencing pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, for offenses that occurred prior to February 27, 2006, does not violate the Sixth Amendment right to a jury trial, or the Ex Post Facto or Due Process Clauses of the United States Constitution. A trial court, upon resentencing pursuant to *Foster*, has discretion to impose consecutive sentences and, despite the *Foster* severance of statutory presumptions, is not required by the rule of lenity to impose a minimum prison term.

{¶ 43} The resentencing of Elmore on his noncapital offenses was conducted in accordance with this court's direction on remand. *State v. Elmore,*.

111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 169.  We accordingly affirm the judgment of the Licking County Court of Common Pleas.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CANNON, JJ., concur.

TIMOTHY P. CANNON, J., of the Eleventh Appellate District, sitting for CUPP, J.

_____

Kenneth W. Oswalt, Licking County Prosecuting Attorney, for appellee.

Keith A. Yeazel and W. Joseph Edwards, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert and Steven L. Taylor, Assistant Prosecuting Attorneys, urging affirmance for amicus curiae, Ohio Prosecuting Attorneys Association.

_____